UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

STEFAN WATHNE, THORUNN WATHNE      :   08 CV 00420 (GEL)
BERGJLOT WATHNE, SOFFIA WATHNE and      :
WATHNE, LTD.,      :
     :
               Plaintiffs,      :
     :
        - against -      :
     :
VALERIE SAROFIM,      :
     :
               Defendant.      :

---------------------------------------------------------- x

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

PHILLIPS NIZER LLP
*Attorneys for Plaintiffs*

666 FIFTH AVENUE
NEW YORK, N.Y. 10103-0084
(212) 977-9700

## Table of Contents

Page

TABLE OF AUTHORITIES ................................................................................................ ii

Preliminary Statement ..................................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ...................................................................................................................... 6

POINT I     THIS COURT HAS PERSONAL JURISDICTION
            OVER SAROFIM ................................................................................ 6

POINT II    WATHNE PROVIDED ADEQUATE
            CONSIDERATION AND SAROFIM RATIFIED THE
            RELEASE BY RETAINING SAID CONSIDERATION .................... 12

CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

### CASES

*ADP Investors Commc'n Services v. In House Attorney Services, Inc.*, 390 F. Supp. 2d 212 (E.D.N.Y. 2005) .................................................................................................... 8, 10

*APC Commodity Corp. v. Ram Dis Ticaret A.S.*, 965 F. Supp. 461 (S.D.N.Y. 1997) .................... 6

*Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25 (2d Cir. 1996) ............... 8

*Air America Jet Charter, Inc. v. Lawhon*, 93 S.W.3d 441 (Tex. App., Houston [14th Dist.] 2002, pet. denied) .................................................................................................... 13

*Arends v. Houston Lighting & Power Co.*, 969 F.Supp. 424 (S.D. Tex. 1997) ........................... 14

*Atwal v. Atwal*, 24 A.D.3d 1297, 807 N.Y.S.2d 776 (4th Dep't 2005) ...................................... 6, 7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) ......... 8, 11

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) .................................................... 6

*Birdwell v. Birdwell*, 819 S.W.2d 223 (Tex. App., Fort Worth 1991) ....................................... 12

*Blakeney v. Lomas Info. Sys., Inc.*, 65 F. 3d 482 (5th Cir. 1995) ............................................. 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................................... 11, 12

*Catauro v. Goldome Bank*, 189 A.D.2d 747, 592 N.Y.S.2d 422 (2d Dep't 1993) ......................... 8

*City of Lubbock v. Phillips Petroleum Co.*, 41 S.W.3d 149 (Tex. App., Amarillo 2000) ............. 12

*Clarendon Nat'l Ins. Co. v. Lan*, 152 F.Supp.2d 506 (S.D.N.Y. 2001) ................................... 6, 8

*CutCo Indus., Inc. v. Naughton*, 806 F. 2d 361 (2d Cir. 1986) .......................................... 6, 7, 8

*David v. American Tel. & Tel. Co.*, 160 A.D.2d 632, 559 N.Y.S.2d 505 (1st Dep't) .................... 14

*Fischbarg v. Doucet*, 38 A.D.3d 270, 832 N.Y.S.2d 164 (1st Dep't 2007) ............................... 6, 8

*Garcia v. LumaCorp.*, Inc., 429 F.3d 549 (5th Cir. 2005) ....................................................... 12

*Gensco, Inc. v. Transformaciones Metalurgicias Especiales, S.A.*, 666 S.W.2d 549 (Tex. App., Houston [14th Dist.] 1984) ................................................................................ 12

*Grove Press, Inc. v. Angleton*, 649 F.2d 121 (2d Cir. 1981) ..................................................... 7

*Ibarra v. Houston Indep. School Dist.*, 84 F.Supp.2d 825 (S.D. Tex. 1999) ............................. 14

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945) ............................................ 11

*Jeanes v. Hamby,* 685 S.W.2d 695 (Tex. App., Dallas 1984) ........................................ 16

*Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195 (1988) ................................ 7

*Long v. Turner,* 134 F.3d 312 (5th Cir.) ................................................................ 15

*Manhattan Life Ins. Co. v. A.J. Stratton Syndicate,* 731 F. Supp. 587 (S.D.N.Y. 1990) ................ 7

*Martin v. Martin, Martin & Richards,* 12 S.W.3d 120 (Tex. App. Fort Worth 1999) .................. 12

*McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981) ........................................ 6

*Metropolitan Life Ins. Co. v. Robertson Ceco Corp.,* 84 F. 3d 560 (2d Cir.) ........................ 11

*Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,* 134 S.W.3d 195 (Tex. 2004) ................ 15

*Northern Natural Gas Co. v. Conoco, Inc.* 986 S.W.2d 603 (Tex. 1998) ............................ 13

*Opticare Acquisition Corp v. Castillo,* 25 A.D.3d 238, 806 N.Y.S.2d 84 (2d Dep't 2005) ............ 8

*PDK Labs. Inc. v. Friedlander,* 103 F.3d 1105 (2d Cir. 1997) ........................................ 7

*Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337 (1970) .................... 8

*Parker v. Dodge,* 98 S.W.3d 297 (Tex. App., Houston [1st Dist.] 2003, no pet.) ...................... 13

*Pilates, Inc. v. Pilates Inst., Inc.,* 891 F.Supp. 175 (S.D.N.Y. 1995) ................................ 8

*SAS Group, Inc. v. Worldwide Inventions, Inc.,* 245 F. Supp. 2d 543 (S.D.N.Y. 2003) ............... 10

*Scholastic, Inc. v. Stouffer,* 2000 U.S. Dist. LEXIS 11516 (S.D.N.Y. Aug. 14, 2000) ............. 7, 12

*Uherek v. Houston Light and Power Co.,* 997 F.Supp. 789 (S.D. Tex. 1998) ............................ 14

*VKK Corp. v. National Football League,* 244 F.3d 114 (2d Cir. 2001) ................................ 14

*Widener v. Arco Oil & Gas Co.,* 717 F.Supp. 1211 (N.D. Tex. 1989) .................................. 13

*Winters v. Langdeau,* 360 S.W.2d 515 (Tex. 1962) .................................................. 13

*Wright v. Eastman Kodak Co.,* 445 F.Supp.2d 314 (W.D.N.Y. 2006) .................................. 14

## STATUTES

Fed. R. Civ P. 12(c) ..................................................................................................................1

§302(a)(1) ..............................................................................................................1, 6, 7, 9, 11

1038483.TOA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                              :
STEFAN WATHNE, THORUNN WATHNE,                                :
BERGJLOT WATHNE, SOFFIA WATHNE and                           :
WATHNE, LTD.                                                  08 CV 00420 (GEL)
                                                              :
                        Plaintiffs,                           :
                                                              :
            v.                                                :
                                                              :
VALERIE SAROFIM,                                              :
                                                              :
                        Defendant.                            :
                                                              :
------------------------------------------------------------- x

## PLAINTIFFS' MEMORANDUM OF
## LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

### Preliminary Statement

Plaintiffs, Stefan Wathne, Thorunn Wathne, Bergjlot Wathne, Soffia Wathne and

Wathne, Ltd. (collectively, "Wathne"), each of whom is based in New York, respectfully submit

this memorandum of law in opposition to the motion of defendant, Valerie Sarofim ("Sarofim"),

a resident of Texas, for an Order, pursuant to Fed. R. Civ. P. 12(c), dismissing the Complaint for

lack of personal jurisdiction, or, alternatively, for failure to state a claim.

Sarofim's motion should be denied in its entirety. Under CPLR §302(a)(1), this Court

has personal jurisdiction over Sarofim since she, personally and through her attorney, Robb

Todd, Esq., transacted purposeful business in New York, and that conduct forms the basis for

Wathne's request for a declaratory judgment concerning the validity of a 2007 release executed

by Sarofim in Wathne's favor (the "Release").

Sarofim's alternative argument, *i.e.*, that the release lacked adequate consideration, fails

miserably since Wathne returned to Sarofim her entire $150,000.00 investment, made in 2002, in

1038483.1

a Manhattan real estate investment, plus a return of six percent interest as she requested. Wathne simply refused to her Sarofim's attorney an insupportable counsel fee exceeding $10,000. Under applicable Texas law, consideration must be "so grossly inadequate so as to shock the conscience" in order for it to be deemed inadequate and that is hardly the case here. In any event, Sarofim accepted and retained the monies paid, thus ratifying the Release, and never objected to Wathne's refusal to pay Todd's fees.

## STATEMENT OF FACTS

The real estate in which Sarofim invested is located in Manhattan. Moreover, each of the individual Wathne plaintiffs resides in New York City. *See* Exh. A, ¶¶ 5-8.[1] The corporate plaintiff, Wathne, Ltd., has its principal place of business at 156 W. 56th St. in Manhattan. *Id.*, ¶ 9. Defendant Sarofim resides in Houston, Texas, but, as detailed below, she engaged in the material activities underlying Wathne's request for a declaratory judgment in New York. *Id.*, ¶ 10.

In January 2002, Sarofim invested $150,000 in a building on West 43rd Street in Manhattan by wiring the money to a New York account designated by Wathne. *See* Malamud Aff., ¶ 4.

More than five years later, on October 8, 2007, Sarofim's attorney, Todd, sent a letter to Bergjlot Wathne in New York, contending that Sarofim "recently discovered that this [$150,000] investment may have, in fact, been a sham investment…", threatening to file suit if the matter was not resolved within thirty days. *See* Malamud Aff., ¶ 3 and Exh. D thereto. Esther Malamud, the New York-based comptroller for Wathne Ltd., then contacted Todd, who alleged

---

[1] Unless otherwise indicated, all exhibit letters refer to the exhibits annexed to the Affidavit of Esther Malamud, sworn to on April 1, 2008 ("Malamud Aff."), submitted in opposition to Sarofim's motion to dismiss.

1038483.1

that Sarofim had been the victim of a money laundering scheme, erroneously claiming that

Sarofim's $150,000.00 investment was in Russian, not New York, real estate. *Id.* On October

16, 2007, Todd sent the following e-mail to Malamud in New York:

> FYI, the following is a cut-and-pasted copy of the article in the
> Indian Express concerning Mr. [Stefan] Wathne which alerted my
> client that her money was likely procured as part of an investment
> sham. As I mentioned today, my client met the Wathne family
> through family connections and just wants to be made whole
> ($150,000.00 plus interest and legal fees).

Malamud Aff., ¶ 6 and Exh. E thereto. Malamud told Todd that she would speak to the Wathnes

and get back to him. *Id.* Malamud was subsequently authorized to return the entirety of

Sarofim's $150,000.00.

On October 23, 2007, Todd e-mailed Malamud in New York, requesting that Sarofim

receive $150,000.00, plus six percent interest. *See* Malamud Aff., ¶ 8 and Exh. F thereto. Todd

further stated that:

> My client remains very concerned that her money was used
> without her knowledge as part of a drug related money laundering
> operation.

*Id.* Todd also insisted that Wathne pay a legal fee of $21,077.05 which Wathne believed was

outrageous given their willingness to return all of Sarofim's investment with interest

immediately upon her request. *Id.*

On October 24, 2007, Todd faxed to Malamud, at her New York office, a Release, signed

by Sarofim, which required Wathne to pay Sarofim $209,783.81, and a payment to Todd of

$10,489.19, half of his original demand. Malamud Aff., ¶ 9 and Exh. G thereto. Two days later,

on October 26, 2007, Malamud arranged for a wire transfer from a bank in New York to Sarofim

of $209,783.81, which payment was subsequently acknowledged by Todd. *Id.*, ¶ 10. Wathne

did not pay Todd the additional $10,489.19 for legal fees because Wathne believed that Todd was engaging in extortion. *Id.*

Sarofim thereafter retained the $209,783.81 and raised no objection concerning the validity of the release. She never asserted that she could preserve any claim relating to her real estate investment and still keep the $209,783.81. Wathne heard nothing further from Todd or Sarofim for two and one-half months, until January 11, 2008, when Todd faxed to Malamud's New York office a letter threatening to file an annexed complaint by 5:00 CDT on January 15, 2008 "if we are unable to resolve this matter as anticipated."[2] See Malamud Aff., ¶ 11 and Exh. H thereto. "Resolution of this matter" according to Todd, "require[d] that…[Sarofim] be compensated for all actual damages, interest and legal fees and an amount approximating your exposure for punitive damages." Exh. H to Malamud Aff. "Actual damages" in Todd's opinion, "include[s] my clients 'benefit of the bargain' which warrants an award equal to that which she was promised. This equates to a doubling or tripling of my client's initial investment (per quarter) from the date of her wire through the present date." *Id.*

On or about January 16, 2008, Malamud contacted Todd, who spoke in a very confusing manner about Sarofim contacting the United States Attorney to discuss Stefan Wathne's alleged money laundering. Malamud Aff., ¶ 14. Malamud felt very uncomfortable with Todd's statements and, consequently, asked the Wathnes' attorney, Helen Davis Chaitman, Esq., to call him back.

---

[2]    The draft complaint, which was to be filed in Texas, named as defendants Stefan Wathne and a non-existent entity, The Wathne Corporation. Malamud Aff., ¶ 11 and Exh. H thereto. The draft pleading alleged that The Wathne Corporation was named as a defendant because Sarofim had received wire transfer instructions in January 2002 on Wathne corporation letterhead. *Id.* In fact, the wire transfer instructions referred simply to "Wathne." There is no mention of The Wathne Corporation. *Id.*

4

That same day, Todd told Chaitman that Sarofim was the alleged victim of a purported money laundering scheme perpetrated by Stefan Wathne; that Stefan Wathne had promised her he would invest her money in Russia so that it would triple every three months; and that she was entitled to $15 million from Wathne. *See* Affidavit of Helen Chaitman, sworn to on April 1, 2008, ("Chaitman Aff."), ¶ 4. Todd threatened that unless Wathne paid Sarofim $15 million, he was going to file suit against them, and emphasized that Sarofim, who allegedly believed that her money had been invested in a drug operation, had contacted the U.S. Attorneys Office concerning Stefan Wathne's dealings with her and was continuing to have contact with the United States Attorneys Office. *Id.* ¶ 5. Later that day, Todd telephoned Chaitman in New York, claiming that he had persuaded his client to accept $4 million from the Wathnes. *Id.*

Sarofim, through Todd, was thus seeking to extort money in return for not filing the lawsuit and not cooperating with the United States Attorney's Office. Chaitman Aff., ¶ 6. Accordingly, on January 16, 2008, Wathne commenced this declaratory judgment action against Sarofim and Todd, seeking to insure that the release barred future action arising out of Sarofim's 2002 investment. *Id.* One week later, on January 23, 2008, Sarofim commenced an action against Stefan Wathne and the non-existent Wathne Corporation, in the Southern District of Texas, Houston Division.

On March 21, 2008, Wathne voluntarily dismissed the Complaint in the New York action against Todd, without prejudice and without costs. On that same date, Wathne moved to dismiss the Texas action on the grounds that the first-filed New York action arose out of the same core event, involved virtually the same parties, and raised the same legal issues. Sarofim then moved to dismiss the instant action on the grounds that this Court lacks personal jurisdiction over her.

5

## ARGUMENT

### POINT I

### THIS COURT HAS PERSONAL JURISDICTION OVER SAROFIM

This Court, sitting in diversity, must apply the law of the forum state, New York, in determining whether it has personal jurisdiction over Sarofim. *See Clarendon Nat'l Ins. Co. v. Lan*, 152 F.Supp.2d 506, 515 (S.D.N.Y. 2001); *CutCo Indus., Inc. v. Naughton*, 806 F. 2d 361, 364 (2d Cir. 1986); *APC Commodity Corp. v. Ram Dis Ticaret A.S.*, 965 F. Supp. 461, 464 (S.D.N.Y. 1997). Sarofim concedes this point. *See* Sarofim's Memorandum of Law In Support of Motion to Dismiss Plaintiff's Complaint ("Sarofim Br.") at 5.

Under CPLR § 302(a)(1), "a court may exercise jurisdiction over any non-domiciliary [defendant] "if that defendant in person or through an agent ... transacts any business within the State or contracts to supply goods or services in the State..." CPLR § 302(a)(1). To maintain personal jurisdiction under this provision, the defendant must transact business in New York and the claims against the defendant must arise out of the underlying business activity. *See Fischbarg v. Doucet*, 38 A.D.3d 270, 832 N.Y.S.2d 164 (1st Dep't 2007); *Atwal v. Atwal*, 24 A.D.3d 1297, 807 N.Y.S.2d 776 (4th Dep't 2005). *See also McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981) ("the existence of some articulable nexus between the business transacted and the cause of action sued upon" is essential).

"New York courts define 'transact[ing] business' as purposeful activity-- 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (*quoting McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 379, 283 N.Y.S.2d 34 (1967)). "Transacting business" under CPLR § 302 "requires only a minimal quantity of activity, provided that it is of the right nature and quality" and, in

6

making a determination, the Court should examine "the totality of the defendant's contacts with the forum." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F. Supp. 587, 592 (S.D.N.Y. 1990) (citations and internal quotations omitted). *See Scholastic, Inc. v. Stouffer*, 2000 U.S. Dist. LEXIS 11516, *12 (S.D.N.Y. Aug. 14, 2000), *aff'd*, 2003 U.S. App. LEXIS 24243 (2d Cir. 2003).

Moreover, as dictated by CPLR §302, the transaction of business can be conducted either by defendant in person or through an agent. CPLR § 302(a)(1). Thus, "any acts by [Sarofim's] agent [in New York] are imputed to her for the purposes of personal jurisdiction." *Scholastic Inc. v. Stouffer, supra*, 2000 U.S. Dist. LEXIS 11516 at *15. *See CutCo Indus., Inc. v. Naughton, supra*, 806 F.2d at 366; *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981) (to be considered an agent for jurisdiction purposes, the putative agent must have acted in the state "for the benefit of, and with the knowledge and consent of "the non-resident principal). There is no question here that Sarofim's attorney, Todd, acted in New York as her agent.

CPLR § 302(a)(1) is a "single act statute", and, therefore, "[o]ne transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here [are] purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99 (1988). *Accord Atwal v. Atwal, supra*, 807 N.Y.S.2d at 777 ("CPLR 302(a)(1) 'is a "single act statute" in that proof of one transaction in New York is sufficient to invoke jurisdiction, even though [C.A. Trust] never enter[ed] New York, so long as [C.A. Trust's] activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'") (*quoting Kreutter*). *See also PDK Labs. Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (solicitation of funds in New York and threats

7

of litigation sufficient for personal jurisdiction); *CutCo Indus., Inc. v. Naughton, supra*, 806 F.2d

at 365; *Clarendon Nat'l Ins. Co. v. Lan, supra*, 152 F.Supp.2d at 517 (to the same effect); *ADP

Investors Commc'n Services v. In House Attorney Services, Inc.*, 390 F. Supp. 2d 212, 219

(E.D.N.Y. 2005) ("In House's 'one shot deal' argument is without merit.") (citing *Citigroup, Inc.

v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000);[3] *Catauro v. Goldome Bank*, 189

A.D.2d 747, 592 N.Y.S.2d 422, 422-23 (2d Dep't 1993) (to the same effect).

 Further, "[w]ith the evolution of technology, it is clear that physical presence alone

should not determine whether one has purposefully availed itself of a state's rights and benefits

for jurisdictional purposes." *Fischbarg v. Doucet, supra*, 832 N.Y.S.2d at 168. *See Bank

Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) ("lawyers

and other professionals today transact business with their pens, their fax machines and their

conference calls- not with their feet"), *later proceeding at* 305 F.3d 120 (2d Cir. 2002); *Agency

Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 30 (2d Cir. 1996) ("Indeed, we

question whether, in an age of e-mail and teleconferencing, the absence of actual personal visits

to the forum is any longer of critical importance"); *ADP Investor Commc'n Services, Inc. v. In

House Attorney Services, Inc., supra*, 390 F. Supp. 2d at 222. "Thus, it is not determinative that

defendants were not physically present in New York." *Fischbarg v. Doucet, supra*, 832

N.Y.S.2d at 168.

---

[3]  *See also, Opticare Acquisition Corp v. Castillo*, 25 A.D.3d 238, 245, 806 N.Y.S.2d 84, 90 (2d Dep't 2005)
("[e]ven assuming none of the appellants ever entered New York to conduct business … it defies logic and
common sense to conclude that they did not transact business here, especially when the 21st Century technology
undoubtedly available to them to go about their work … while allowing them the option of living and physically
working elsewhere"); *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340
(1970) ("one need not be physically present in order to be subject to the jurisdiction of our courts under
CPLR 302 for particularly in this day of instant long-range communications, one can engage in extensive
purposeful activity here without ever actually setting foot in the State"); *Pilates, Inc. v. Pilates Inst., Inc.*, 891
F.Supp. 175, 179 (S.D.N.Y. 1995) ("defendant need not actually enter New York to be viewed as transacting
business in the State [under CPLR 302(a)(1)]").

8

The Court here has personal jurisdiction over Sarofim under CPLR §302(a)(1). The event underlying execution of the Release at issue was Sarofim's $150,000 investment in New York real estate, which funds she wired to a New York account in the name of Soffia, Thorunn and Bergjlot Wathne in January, 2002. Five years later, Sarofim's lawyer, Todd, alleged, in an October 8, 2007 letter to Wathne's New York office, that the investment was a "sham," threatening to file suit if the matter was not resolved within thirty days. *See* Malamud Aff., ¶ 3 and Exh. 7 thereto. On October 16, 2007, Todd e-mailed to New York an article from an Indian newspaper concerning the arrest of Stefan Wathne in New Delhi, which article allegedly "alerted [Sarofim] that her money was likely procured as part of an investment sham." *Id.*, ¶ 6 and Exh. 3 thereto. On October 23, 2007, Todd e-mailed Wathne in New York, claiming that his "client remains concerned that her money was used without her knowledge as part of a drug related, money laundering operation. *Id.*, ¶ 8 and Exh. F thereto. Wathne subsequently forwarded Sarofim's $150,000.00 investment, with six percent interest, from its New York account in consideration for the signed release transmitted by Sarofim to New York.

The more critical acts compelling Wathne's filing of the declaratory judgment action occurred in New York in January 2008. On January 11, 2008, Todd, in a fax transmitted to Wathne's New York office, threatened to file an annexed complaint by 5:00 CDT on January 15, 2008 "if we are unable to resolve this matter as anticipated." *See* Malamud Aff., ¶ 11 and Exh. H thereto. "Resolution of this matter" according to Todd, "require[d] that…[Sarofim] be compensated for all actual damages, interest and legal fees and an amount approximating your exposure for punitive damages." Exh. H to Malamud Aff. "Actual damages" in Todd's opinion, "include[s] my clients 'benefit of the bargain' which warrants an award equal to that which she

9

was promised. This equates to a doubling or tripling of my client's initial investment (per quarter) from the date of her wire through the present date." *Id.*

On January 16, 2008, Wathne, through its Comptroller, Esther Malamud, contacted Todd, who threatened to have Sarofim contact the United States Attorney's Office to discuss Stefan Wathne's alleged money laundering. Malamud Aff., ¶ 14. Malamud then asked Wathne's attorney, Chaitman, to communicate with Todd.

Todd told Chaitman that Sarofim was the victim of a purported money laundering scheme perpetrated by Stefan Wathne; that Stefan Wathne had promised Sarofim he would invest her money in Russia so that it would triple every three months; and that she was entitled to $15 million from Wathne. *See* Chaitman Aff., ¶ 4. Todd threatened that, unless Wathne paid Sarofim $15 million, he was going to file suit against them, and emphasized that Sarofim, who allegedly believed that her money had been invested in a drug operation, had contacted the United States Attorney's Office concerning Stefan Wathne's dealings with her. *Id.* ¶ 5. Later that day, Todd telephoned Chaitman in New York, claiming that he had persuaded his client to accept $4 million from the Wathnes. *Id.*

Sarofim, through Todd, thus sought to extort money in return for refraining from filing the lawsuit and from cooperating with the United States Attorney's Office. Chaitman Aff., ¶ 6. Wathne was left with no recourse but to file this action against Sarofim, seeking a judgment declaring that Sarofim was barred from commencing a lawsuit arising out of her investment either by virtue of the release or pursuant to an accord in satisfaction. *Id.* In that a substantial number of critical events occurred in New York, through Todd's threatening e-mails, letters and phone conversations, this Court has personal jurisdiction over Sarofim. *See, generally, SAS Group, Inc. v. Worldwide Inventions, Inc.,* 245 F. Supp. 2d 543, 548-550 (S.D.N.Y. 2003); *ADP*

10

*Investors Commc'n Services v. In House Attorney, supra,* 390 F. Supp.2d at 220 ("[r]esponding to Defendants' second argument, that telephone calls and e-mails sent to New York by a non-domiciliary defendant are insufficient to establish jurisdiction, ADP correctly points out that in an age of advanced communications technology, physical presence of the defendant in New York is no longer dispositive").

Moreover, the Court's exercise of personal jurisdiction over Sarofim under CPLR § 302(a)(1) comports with federal due process standards. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Bank Brussels Lambert v. Fiddler Gonzalez, supra, 179* F. 3d at 787. "The *due process clause of the Fourteenth Amendment* permits a state to exercise personal jurisdiction over a non-domiciliary with whom it has certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (citations and internal quotation marks omitted). *Bank Brussels, supra,* 305 F.3d at 127.

Minimum contacts exist where the defendant "purposefully availed itself" of the privilege of doing business in the forum state and could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75, (1985). In determining whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice," the Court considers whether extending jurisdiction "is reasonable under the circumstances of the particular case." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F. 3d 560, 567 (2d Cir.) *cert. denied,* 519 U.S. 1006, and *cert. denied,* 519 U.S. 1007 (1996) (citing *International Shoe Co. supra,* 326 U.S. at 316.

Sarofim's contacts with New York, directly and through Todd, are sufficient to constitute a transaction of business. Through those contacts, Sarofim purposely availed herself "of the

11

privilege of conducting activities within the [New York]," and "should reasonably anticipate being with whom it has certain minimum contacts ... such that haled into court" in New York in connection with such the maintenance of the suit does not offend traditional sales. *Burger King, 471 U.S. at 474-75* (citation and quotation marks omitted). See *Scholastic Inc. v. Stouffer, supra,* 2000 U.S. Dist. LEXIS 11516 at *15.

## POINT II

## WATHNE PROVIDED ADEQUATE CONSIDERATION AND SAROFIM RATIFIED THE RELEASE BY RETAINING SAID CONSIDERATION

Sarofim recognizes that this Court has personal jurisdiction over her. She likely also knows that her voluntary execution of the Release in October, 2007 bars her from commencing any lawsuit arising out of her 2002 investment. Accordingly, Sarofim, desperate to nullify the Release, and thereby attempt to extort more money from Wathne, argues that there was inadequate consideration given for the Release. *See* Sarofim Br. at 9-10.

Under Texas law, in order for consideration to be deemed inadequate: "it must be so grossly inadequate as to shock the conscience, being tantamount to fraud." *Martin v. Martin, Martin & Richards,* 12 S.W.3d 120, 125 (Tex. App., Fort Worth 1999)(citation omitted) *See Garcia v. LumaCorp.,* Inc., 429 F.3d 549, 555 (5th Cir. 2005) ("Luma Corp.'s offer to pay Garcia's then-outstanding medical bills... plus an additional payment of $10,000 in exchange for the release was surely not 'so grossly inadequate as to shock the conscience.'"); *City of Lubbock v. Phillips Petroleum Co.,* 41 S.W.3d 149, 161 (Tex. App., Amarillo 2000); *Birdwell v. Birdwell,* 819 S.W.2d 223, 227-28 (Tex. App., Fort Worth 1991).

Moreover, while a complete failure of consideration constitutes a defense to an action on a written contract, a partial failure of consideration is not grounds for rescission of the contract. *See Gensco, Inc. v. Transformaciones Metalurgicias Especiales, S.A.,* 666 S.W.2d 549, 552

12

(Tex. App., Houston [14th Dist.] 1984); *Parker v. Dodge*, 98 S.W.3d 297 (Tex. App., Houston [1st Dist.] 2003, no pet.). In this regard, consideration is defined as "either a benefit to the promissor or a loss or detriment to the promissee." *Northern Natural Gas Co. v. Conoco, Inc.* 986 S.W.2d 603, 607 (Tex. 1998). There is no requirement that the consideration on each side be equal or the same. *See Air America Jet Charter, Inc. v. Lawhon*, 93 S.W.3d 441, 444 (Tex. App., Houston [14th Dist.] 2002, pet. denied). The burden of proving failure of consideration is on the party raising the claim. *See Winters v. Langdeau*, 360 S.W.2d 515, 516 (Tex. 1962).

Here, Wathne complied with Sarofim's demand for the return of her entire $150,000.00 investment, plus six percent interest, wiring Sarofim $209,209,783.81, while declining to pay an additional $10,489.19 in fees improperly sought by Todd. Under no circumstances can Wathne's payment be deemed inadequate consideration for the Release. There is no evidence that Sarofim paid Todd any money in legal fees and it is inconceivable that he incurred $10,489.19 in legal fees for the work he actually performed.

Moreover, Sarofim retained the nearly $210,000.00 without objection. "A party cannot be permitted to retain the benefits which he has received under a contract, and at the same time escape the obligations which such contract imposed upon him." *Widener v. Arco Oil & Gas Co.*, 717 F.Supp. 1211, 1217 (N.D. Tex. 1989)(citing *Rachesky v. Finklea*, 329 F.2d 606 (4th Cir. 1964)). "Thus, if the releasor retains the consideration, after he learns that the release is voidable, his continued retention of the benefits constitutes a ratification of the release. *Id.* (citations omitted) As one court aptly stated:

> If the releasing party does not promptly repudiate the contract or release, he will be deemed to have ratified it. A party may ratify a contract or release entered into it under duress by "intentionally accepting benefits under the contract," by "remaining silent acquiescing in the contract for a period of time after he has the opportunity to void it," or by "acting upon it, performing under it, or affirmatively acknowledging it."

13

*VKK Corp. v. National Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001)(*quoting in re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st Cir. 1989)(footnote omitted)). See *also Blakeney v. Lomas Info. Sys., Inc.*, 65 F. 3d 482, 485 (5th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996)(concluding that defective release is voidable and may be rescinded by restoring the *status quo ante* and returning consideration shortly after discovery of the alleged deficiency); *Uherek v. Houston Light and Power Co.*, 997 F.Supp. 789, 795 (S.D. Tex. 1998)("[p]laintiff's retention of the benefits received in exchange for the Release ratified it; consequently, even if her proposed defenses, including duress, stress, and harassment had merit, which they clearly do not, they are precluded by ratification")(citing *Pack v. City of Forth Worth*, 552 S.W. 2d 895, 898-99 (Tex. Civ. App., Forth Worth) 557 S.W.2d 771 (Tex. 1977)); *Arends v. Houston Lighting & Power Co.*, 969 F.Supp. 424, 428 (S.D. Tex. 1997)(to the same effect)(citing *Pack*); *Ibarra v. Houston Indep. School Dist.*, 84 F.Supp.2d 825, 830 (S.D. Tex. 1999)("There is no evidence that Ibarra ever notified the District of the deficiencies now alleged, or that he ever repudiated the Release on the basis that it was not voluntarily executed or was obtained under duress")(citing *Blakeney supra*).[4]

Simply put, Sarofim has, to this date, retained the entire $209,209,783.81 paid to her in exchange for the Release. She cannot be heard now to contend that the Release is somehow invalid because Todd's extortionate claim for legal fees was not paid.

---

[4]   See *also Wright v. Eastman Kodak Co.*, 445 F.Supp.2d 314, 320 (W.D.N.Y. 2006)("[p]laintiffs in this case do not deny that they accepted and retained the monies that Kodak paid to them pursuant to the releases. There is no hint in the record that they have repudiated those releases or attempted to return the money… plaintiffs cannot have it both ways: enjoy the substantial monetary benefits that Kodak agreed to give them as consideration for the releases, but then asking that they be excused from living up to their end of the bargain by honoring those releases."); *David v. American Tel. & Tel. Co.*, 160 A.D.2d 632, 559 N.Y.S.2d 505 (1st Dep't) *appeal dismissed*, 76 N.Y.2d 932, 563 N.Y.S.2d 57 (1990), and *appeal denied*, 77 N.Y.2d 802, 567 N.Y.S.2d 643 (1991)("[a] contract allegedly executed under duress is voidable, not void, and a plaintiff must demonstrate his decision to challenge that contract rather than to ratify by accepting its benefits, even where he bases the hard choice of eschewing those benefits in order to pursue his legal rights").

14

Finally, the cases upon which Sarofim relies are beside the point. In *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195 (Tex. 2004)(cited at 9-10), a pipeline owner, Mustang, had contracted with Driver to construct 100 miles of a 200-mile pipeline. Driver and Mustang contemplated that time was of the essence and, therefore, timely completion of the pipeline by a certain date was crucial. *Id., 134 S.W.3d at 196*. Even at the bidding stage, Mustang and Driver contemplated that completion of the project would be "no later than" a specific date, and Driver increased its initial bid because of that requirement. *Id.* The contract imposed a work schedule of fourteen weeks, ninety-eight-days, seven days a week, and eleven working hours daily. *Id. at 196-197*.

Though Driver claimed that extensive rains caused delay and attempted to renegotiate the contract to obtain additional time, the specifics of the contract addressed means of protecting not only crews working in the rain, but also the pipeline welds, and thus contemplated that at least some work be done in inclement, rainy weather. *134 S.W.3d at 197*. When Driver stopped work after fifty-eight days and later indicated that it was not ready to resume work, Mustang declared Driver in default. *Id. at 196*. Because Driver's timely performance was "essential," and Driver undisputedly did not perform timely, the supreme court ruled that the materiality of Driver's breach was a question of law that did not require resolution by the trier of fact. *See id., 134 S.W.3d at 196,199*. None of these facts bear any relationship to the facts at issue here

Sarofim's reliance on *Long v. Turner*, 134 F.3d 312 (5th Cir.), *cert. denied*, 525 U.S. 867 (1998)(cited at 9) is likewise misplaced. The dispute in *Long* concerned the legal significance of IRS forms 1099A that were issued by Resolution Trust Company to Appellees, who owed an outstanding judgment, then owned by RTC, on an unpaid loan they had guaranteed. 134 F.3d at 314. The Court held "even if the issuance of a 1099A form was evidence of an intent in some

15

sense to 'forgive' the debt, we find, as a matter of Texas law, that such an intent alone is insufficient to release or discharge a debt. *Id.* at 316. Here, too, none of this has any applicability to the case at bar.

*Jeanes v. Hamby*, 685 S.W.2d 695, 697 (Tex. App., Dallas 1984) (cited at 9-10) is also inapposite. *Jeanes* concerned the validity of a release in the context of partial payment of liquidated debt, *i.e.*, a in the form of a formal judgment. Here, there is no judgment and Wathne had no obligation to return any portion of Sarofim's investment, let alone pay Todd's questionable legal bill. Consequently, Wathne's return of Sarofim's entire investment, plus six percent interest, was more than adequate consideration for Sarofim's commitment not to sue in connection with her investment.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that defendant's Fed. R. Civ. P. 12(c) motion for judgment on the pleadings be denied in its entirety, with costs and disbursements, including attorney's fees.

Dated: New York, New York
      April 3, 2008

PHILLIPS NIZER LLP

By: Helen Davis Chaitman 57851
     Helen Davis Chaitman
     Attorneys for Plaintiffs
     666 Fifth Avenue
     New York, New York 10103-0084
     (212) 977-9700

Of Counsel:
  Helen Davis Chaitman
  Bruce J. Turkle

16