UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEFAN WATHNE, THORUNN WATHNE,
BERGJLOT WATHNE, SOFFIA WATHNE, and
WATHNE, LTD.,

                  08 CV 00420 (GEL)

    Plaintiffs,

  v.

VALERIE SAROFIM and ROB TODD,

    Defendants.
------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
VALERIE SAROFIM'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO RULE 12(c) OF THE FEDERAL RULES OF CIVIL PROCEDURE**


               Jeffrey S. Weinstein (JW-2619)
               Sanjit Shah (SS-0148)
               MOUND COTTON WOLLAN & GREENGRASS
               One Battery Park Plaza
               New York, New York 10004
               Phone: (212) 804-4200
               Fax: (212) 344-8066
               jweinstein@moundcotton.com
               sshah@moundcotton.com

               *Attorneys for Defendant Valerie Sarofim*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    POINT I

        THE COURT DOES NOT HAVE
        PERSONAL JURISDICTION OVER
        SAROFIM PURSUANT TO CPLR 302(a)(1) ...................................................... 3

    POINT II

        THE MUTUAL RELEASE DOES NOT
        BAR AN ACTION BY SAROFIM AGAINST
        STEFAN WATHNE AND WATHNE CORPORATION ....................................... 8

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

ADP Investor Communication Servs., Inc.
v. In House Attorney Servs., Inc.,
390 F. Supp. 2d 212 (S.D.N.Y. 2005)..................................................................................7

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,
98 F.3d 25 (2d Cir. 1996)..............................................................................................4, 5, 6

Barrett v. Tema Dev. (1988) Inc.,
463 F. Supp. 2d 423 (S.D.N.Y. 2006)................................................................. 3, 5, 6-7, 8

Beatie & Osborn LLP v. Patriot Sci. Corp.,
431 F. Supp. 2d 367 (S.D.N.Y. 2006)..............................................................................4, 5

J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,
131 F. Supp. 2d 544 (S.D.N.Y. 2001)...............................................................................3, 8

Jeanes v. Hamby,
685 S.W.2d 695 (Tex. App. 1984).......................................................................................9

Larkins v. Miller,
239 S.W.3d 112 (Ky. Ct. App. 2007) ..................................................................................9

Long v. Turner,
134 F.3d 312 (5th Cir. 1998) ...............................................................................................9

Maranga v. Vira,
386 F. Supp. 2d 299 (S.D.N.Y. 2005)...............................................................................5, 6

Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,
134 S.W.3d 195 (Tex. 2004).......................................................................................8, 9 n.3

SAS Group, Inc. v. Worldwide Inventions, Inc.,
245 F. Supp. 2d 543 (S.D.N.Y. 2003)..................................................................................7

Scholastic, Inc. v. Stouffer, No. 99 Civ. 11480,
2000 WL 1154252 (S.D.N.Y. Aug. 14, 2000)..................................................................7, 8

**Statutes and Rules**

CPLR § 301 ........................................................................................................................... 3

CPLR § 302(a) ............................................................................................................... 1, 3, 8

Fed. R. Civ. P. 12(c) ......................................................................................................... 1, 10

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT VALERIE SAROFIM'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant Valerie Sarofim respectfully submits this reply memorandum of law in further support of her motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, dismissing the Complaint of Plaintiffs Stefan Wathne, Thorunn Wathne, Bergjlot Wathne, Soffia Wathne, and Wathne, Ltd.

### PRELIMINARY STATEMENT

Plaintiffs contend that this Court has personal jurisdiction over Sarofim under section 302(a)(1) of the New York Civil Practice Law and Rules (the "CPLR") because her money was purportedly invested in New York, and not Russian, real estate, and because her lawyer, Rob Todd, sent e-mails and faxes, and made phone calls, to New York. Plaintiffs' argument is unavailing. Even if Sarofim's money had been invested in New York real estate, it was her belief, based on representations by Stefan Wathne, that her money was being invested in Russian real estate. Moreover, Todd's limited communications with the Plaintiffs to get his client's money back were not of the quality to support the inference that Sarofim purposefully availed herself of the privilege of conducting activities in New York. Because there were no communications by Sarofim or her counsel that were an integral part of a transaction directed at New York, this Court does not have personal jurisdiction over Sarofim pursuant to CPLR § 302(a)(1).

Also without merit is Plaintiffs' claim that they provided adequate consideration for the release. In fact, Plaintiffs admit that they failed to pay the entire amount required for Sarofim's release to be effective:

> On October 24, 2007, Mr. Todd transmitted to me, by fax to my New York office, a Release, signed by Valerie Sarofim, which required Wathne to pay Ms. Sarofim $209,783.81, and to make a payment to Mr. Todd in the amount of $10,489.19, half of his original demand.
>
> Two days later, on October 26, 2007, I arranged for a wire transfer from a bank in New York to Sarofim of $209,783.81, which payment was subsequently acknowledged by Mr. Todd. Wathne did not pay the additional $10,489.19 for legal fees because Wathne believed that Todd was engaging in extortion.[1]

Under applicable principles of Texas law, Sarofim's release did not become effective because she did not receive the consideration for which she bargained.

In any event, the Mutual Release was between Sarofim and any entity in which she has an ownership interest, on one hand, and Thorunn Wathne, Bergjlot Wathne, Soffia Wathne and any entity in which they have an ownership interest, on the other hand. Inasmuch as Stefan Wathne is not a party to the Mutual Release, that agreement does not prevent Sarofim from suing him for fraud and related claims in connection with her investment. Nor does the Mutual Release preclude Sarofim's claims against Wathne Corporation, which Plaintiffs allege does not exist.[2] If, according to Plaintiffs, Wathne Corporation does not exist, then it is axiomatic that they cannot have an equitable or beneficial ownership interest in that entity.

For these reasons, Sarofim's motion for judgment on the pleading should be granted, and the Complaint should be dismissed.

---

[1] April 1, 2008 Affidavit of Esther Malamud in opposition to Sarofim's motion for judgment on the pleadings (the "Malamud Aff.") ¶¶ 9, 10. The release actually required that two payments, one in the amount of $209,783.81 and the other in the amount of $10,489.19, be made to Sarofim. (Mutual Release of Claims (the "Mutual Release"), annexed as Exhibit B to the March 11, 2008 Declaration of Sanjit Shah (the "Shah Decl.") ¶ 1.)

[2] The Wathne Corporation is a New Jersey corporation whose filing number with the New Jersey Department of State is 0100492600. It is registered with the New York Department of State as a foreign corporation. (See http://appsext8.dos.state.ny.us/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=1665920&p_co rpid=1585871&p_entity_name=%77%61%74%68%6E%65&p_name_type=%25&p_search_type=%43%4F%4E%5 4%41%49%4E%53&p_srch_results_page=0.)

**ARGUMENT**

**POINT I**

**THE COURT DOES NOT HAVE PERSONAL
JURISDICTION OVER SAROFIM PURSUANT TO CPLR 302(a)(1)**

In their memorandum of law in opposition to Sarofim's motion, Plaintiffs do not even attempt to refute Sarofim's argument that the Court has no personal jurisdiction over her pursuant to CPLR §§ 301 or 302(a)(2), (3), or (4). Rather, Plaintiffs focus on section 302(a)(1), on the theory that this action arises from Sarofim's transaction of business in New York. Plaintiffs are mistaken.

Under CPLR § 302(a)(1), a court may exercise personal jurisdiction over a defendant if, inter alia, the defendant transacts business in New York, and the cause of action arises from that act:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

CPLR § 302(a)(1).

"To establish personal jurisdiction under this provision, the plaintiff must demonstrate that the defendant engaged in a purposeful business transaction in or directed to New York and that such contacts with the state had a 'substantial relationship' to the claim asserted in the underlying litigation." Barrett v. Tema Dev. (1988) Inc., 463 F. Supp. 2d 423, 429 (S.D.N.Y. 2006). See also J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) ("C.P.L.R. § 302(a)(1) contains two requirements relevant to this action: (1) the non-

domiciliary must transact business within the state, and (2) the claim against the non-domiciliary must arise out of that business activity.").

"A non-domiciliary transacts business under section 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006) (quoting CutCo Indus. Inc. v Naughton, 806 F.2d 361, 365 (2d Cir. 1986)). "The following factors should be considered when determining whether a non-domiciliary has transacted business: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the defendant negotiated or executed a contract in New York, and whether the defendant visited New York after executing the contract with the parties; (3) whether there is a choice-of-law clause in any such contract; and (4) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." Id. (citing Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)).

Applying the Agency Rent A Car factors here, it is clear that Sarofim did not purposefully avail herself of the privilege of conducting business in New York, or invoke the benefits and protections of its laws, when Todd negotiated the Mutual Release on her behalf.

First, Sarofim does not have an ongoing relationship with a New York corporation: all she did was to entrust Stefan Wathne with $150,000 to be invested in Russian real estate. That Stefan may have invested Sarofim's money in Manhattan real estate, as Plaintiffs claim without any documentary support, does not establish an ongoing contractual relationship with a New York entity. Moreover, the Mutual Release, which was intended to allow Sarofim to recoup her principal with interest and attorneys' fees through two payments to be made on or before 5:00

p.m. CST on October 28, 2007 (Malamud Aff. Ex. G, ¶ 1), cannot reasonably be considered an "ongoing" contractual relationship. See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 30 (2d Cir. 1996) (ongoing contractual relationship found where "licensees submit monthly reports and fees to the New York headquarters and are in contact with individuals at AVIS headquarters on an almost daily basis."); Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (applying Agency Rent A Car, concluding that "[d]efendant Mavi did have an ongoing contractual relationship with a New York corporation, albeit a relatively minimal one, in that Taj Maran had an ongoing obligation under the contract of sale of the Motel to make mortgage payments to Mavi."). Thus, the first Agency Rent A Car factor weighs against finding that Sarofim transacted business in New York.

Second, the Mutual Release was neither drafted nor executed in New York. In fact, Sarofim, a Texas citizen, was the only party to the Mutual Release who initialed and executed it (Mutual Release, Malamud Aff. Ex. G). Her Texas lawyer, Rob Todd, drafted the agreement, and faxed it from Texas to Esther Malamud, the chief financial officer of Wathne, Ltd. (Id.) These facts weigh strongly against finding that Sarofim transacted business here. See Barrett, 463 F. Supp. 2d at 430 (granting defendant's motion to dismiss for lack of personal jurisdiction, holding that "the contract was not negotiated or executed in New York, and it does not contain any choice-of-law provision. Barrett acknowledges that the [contract] was drafted in London after he met with Khoury there."). Todd's negotiation of the Mutual Release from Texas by making phone calls to New York and sending faxes and e-mails to New York recipients is not sufficient to constitute transaction of business with New York by Sarofim. See, e.g., Beatie & Osborn, 431 F. Supp. 2d at 388 ("'[T]elephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish

personal jurisdiction.") (quoting <u>Burrows Paper Corp. v. R.G. Eng'g, Inc.</u>, 363 F. Supp. 2d 379, 386 (S.D.N.Y. 2005)); <u>Maranga</u>, 386 F. Supp. 2d at 306 (concluding that contract negotiations by telephone, fax and mail between parties who are outside the state and parties who are inside the state are insufficient to constitute transaction of business in New York by the out-of-state parties).

Third, the Mutual Release's choice-of-law clause, which provides that the "agreement shall be governed by the laws of the United States of America and the State of Texas[,]" and that performance of the agreement shall be in Harris County, Texas (Mutual Release, Malamud Aff. Ex. G, ¶ 13), militates against finding that Sarofim transacted business in New York. <u>Barrett</u>, 463 F. Supp. 2d at 430 (holding that there was no transaction of business by an out-of-state defendant where "the contract was not negotiated or executed in New York, and it does not contain any choice of law provision."); <u>Maranga</u>, 386 F. Supp. 2d at 306 ("All but the first of the specifically enumerated <u>Agency Rent A Car</u> factors here weigh against finding transaction of business in New York. . . . There was no New York choice of law clause in the contract . . . ."). Fourth, and finally, under the Mutual Release, there is "no ongoing supervision emanating from New York, or payment flowing into New York." <u>Id.</u>

In sum, not one of the <u>Agency Rent A Car</u> factors favors a finding that Sarofim transacted business in New York. Plaintiffs' assertion that there is personal jurisdiction over Sarofim because "a substantial number of critical events occurred in New York, through Todd's threatening e-mails, letters and phone conversations," (Plaintiffs' Memorandum of Law, at 10), is without merit. In fact, even assuming that Todd was Sarofim's agent, Plaintiffs have cited no cases "where jurisdiction was based primarily on communications between the parties unless those communications were an integral part of a transaction directed at New York." <u>Barrett</u>, 463

F. Supp. 2d at 431. The purported investment of Sarofim's money in Manhattan real estate may not be construed as a transaction directed at New York, because Stefan Wathne led her to believe that he would invest her money in Russian real estate. (March 17, 2008 Declaration of Valerie Sarofim ¶ 3; Malamud Aff. ¶¶ 3, 5.) Moreover, Todd's communications with the Wathnes on Sarofim's behalf may not be construed as a transaction directed at New York, because the sole purpose of those communications was to obtain the return of Sarofim's funds, with interest and attorneys' fees. (Malamud Aff. ¶¶ 8, 9.)

Plaintiffs cite ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc., 390 F. Supp. 2d 212 (S.D.N.Y. 2005), SAS Group, Inc. v. Worldwide Inventions, Inc., 245 F. Supp. 2d 543 (S.D.N.Y. 2003), and Scholastic, Inc. v. Stouffer, No. 99 Civ. 11480, 2000 WL 1154252 (S.D.N.Y. Aug. 14, 2000), to support their assertion that Todd's communications with Malamud demonstrate that Sarofim purposely availed herself of the privilege of conducting activities in New York. (Plaintiffs' Memorandum of Law, at 10-12.) Those cases are readily distinguishable from the instant matter, however, because they each involved non-domiciliaries who sought to establish a business relationship with New York entities, e.g., ADP Investor Communication Servs., Inc., 390 F. Supp. 2d at 216 ("At some point during the Spring of 2003, In House [a California corporation] telephoned Mr. Aleck Masouas, an employee at ADP's Edgewood, New York facility, to inquire as to whether ADP was interested in handling the task of mailing the proxy materials to the Peregrine shareholders."); SAS Group, Inc., 245 F. Supp. 2d at 546 ("In May of 2001, Worldwide's [a Florida corporation] president and vice president . . . traveled to New York in order to meet with Michael Sobo, the president of SAS. The purpose of the visit was to try and license or sell its goods to SAS.");

Scholastic, 2000 WL 1154252, at *6 ("Concurrently, and also at defendant's direction, Curtis actively solicited business from New York business entities . . . .").

Here, by contrast, Sarofim's attorney, Todd, merely tried to get his client's money back. Plaintiffs' papers are bereft of any assertion that Sarofim tried to establish a business relationship with a New York entity. Under such circumstances, no reasonable argument can be made that Sarofim, through her attorney, purposefully availed herself of the privilege of conducting activities in New York, thus invoking the benefits and protections of its laws. Barrett, 463 F. Supp. 2d at 430 ("As the court stated in Maranga, 'communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself.'") (quoting Maranga, 386 F. Supp. 2d at 306)).

Because Plaintiffs cannot demonstrate that Sarofim "transacted business" in New York, either directly or through her attorney, this Court may not exercise personal jurisdiction over her pursuant to CPLR § 302(a)(1). J.L.B. Equities, 131 F. Supp. 2d at 550 (holding that transaction of business in New York is one of two requirements that must be satisfied for a Court to exercise personal jurisdiction pursuant to CPLR § 302(a)(1)). This action should therefore be dismissed.

## POINT II

### THE MUTUAL RELEASE DOES NOT BAR AN ACTION BY SAROFIM AGAINST STEFAN WATHNE AND WATHNE CORPORATION

Essentially, Plaintiffs argue that Sarofim's release of claims against them is valid and enforceable even though they unilaterally decided not to pay her the consideration for which she bargained. As discussed in Sarofim's moving brief, this contention is not a correct statement of Texas law. Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a

material breach of that contract the other party is discharged or excused from further performance.").[3] See also Long v. Turner, 134 F.3d 312, 316 (5th Cir. 1998); Jeanes v. Hamby, 685 S.W.2d 695, 697 (Tex. App. 1984).

Plaintiffs also maintain that Sarofim cannot sue them because she has retained what was paid to her, even though it was not the full amount required under the Mutual Release. (Plaintiffs' Memorandum of Law, at 13-14.) What Plaintiffs fail to understand, however, is that Sarofim has not sued the parties to the Mutual Release, i.e., Thorunn Wathne, Bergjlot Wathne, Soffia Wathne, and "any company or entity in which any of the Individual Parties to this agreement have an equitable or beneficial ownership interest . . . ." (Malamud Aff. Ex. G.). Instead, Sarofim has sued Stefan Wathne, and the Wathne Corporation, a company that Plaintiffs claim does not even exist. (Plaintiffs' Memorandum of Law, at 5 ("One week later, on January 23, 2008, Sarofim commenced an action against Stefan Wathne and the non-existent Wathne Corporation, in the Southern District of Texas, Houston Division.")

Because Stefan Wathne is not a party to the Mutual Release, and Thorunn Wathne, Bergjlot Wathne, and Soffia Wathne cannot have an equitable or beneficial ownership interest in a purportedly non-existent corporation, Sarofim may sue Stefan and the Wathne Corporation for fraud and other related claims in connection with her $150,000 investment. See Larkins v. Miller, 239 S.W.3d 112, 115 (Ky. Ct. App. 2007) ("[A] release is an agreement between parties where one party surrenders the right to sue the other party for a claim that might arise.").

---

[3] In their memorandum of law, Plaintiffs attempt to distinguish this case on the facts. (Plaintiffs' Memorandum of Law, at 15-16.) Sarofim, however, has not cited Mustang Pipeline Co. and other cases because they are factually similar; rather she has cited them for their enunciation of general legal principles that are relevant here.

9

## CONCLUSION

For the reasons set forth herein, and in Sarofim's memorandum of law in support of her Rule 12(c) Motion, Defendant Valerie Sarofim respectfully requests that her motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) be granted, and the Complaint be dismissed against her.

Dated: New York, New York
April 11, 2008

                              MOUND COTTON WOLLAN & GREENGRASS

By:   s/Sanjit Shah
       Jeffrey S. Weinstein (JW-2619)
       Sanjit Shah (SS-0148)
One Battery Park Plaza
New York, New York 10004
Phone: (212) 804-4200
Fax: (212) 344-8066
jweinstein@moundcotton.com
sshah@moundcotton.com
*Attorneys for Defendant
Valerie Sarofim*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEFAN WATHNE, THORUNN WATHNE,
BERGJLOT WATHNE, SOFFIA WATHNE, and
WATHNE, LTD.,

                                                                                          08 CV 00420 (GEL)

          Plaintiffs,

     v.

VALERIE SAROFIM and ROB TODD,

          Defendants.
------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

     I hereby certify that true and correct copies of Defendant Sarofim's REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR JUDGMENT ON THE PLEADINGS, was served by United States mail, postage pre-paid, on the 11th day of April 2008 upon those persons or entities listed below.

Bruce J. Turkle, Esq.
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084
*Attorneys for Plaintiffs*

                                                                 /s/ Sanjit Shah
                                                                 Sanjit Shah (SS-0148)